**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| **ULYSSES GENE THIBODEAUX ET AL** | **CASE NO. 2:25-CV-00427** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **STATE FARM FIRE & CASUALTY CO** | **MAGISTRATE JUDGE DAVID J. AYO** |

# MEMORANDUM ORDER

Before the court is a *Daubert* Motion [doc. 34] filed by defendant State Farm Fire & Casualty Company ("State Farm"). Plaintiffs oppose the motion. Doc. 42.

## I. BACKGROUND

This suit arises from alleged tornado damage to a home owned by plaintiffs Ulysses Gene Thibodeaux and Phyllis Thibodeaux on April 10, 2024. Doc. 1, att. 1. At all relevant times the home was insured under a policy issued by State Farm. Plaintiffs filed suit against State Farm in the Fourteenth Judicial District Court, Calcasieu Parish, Louisiana, raising breach of contract and bad faith claims under Louisiana law. *Id.* State Farm then removed the matter to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. Doc. 1. The matter is set for jury trial before the undersigned on October 19, 2026. Doc. 29.

State Farm now brings this motion, seeking to exclude or limit testimony from plaintiffs' engineer Charles Norman under Rule 702 and the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Specifically, it challenges Mr. Norman's methodology in failing to adequately inspect the property or document damage

caused by the tornado before recommending major repairs. Doc. 34. Plaintiffs oppose the motion. Doc. 42.

## II.
## Law & Application

### A. Legal Standard

The trial court serves as gatekeeper in determining the admissibility of expert testimony, by making an initial determination of whether the expert's opinion is relevant and reliable. *See Daubert*, 509 U.S. at 589. This gatekeeping function extends to all expert testimony, whether scientific or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Accordingly, Federal Rule of Evidence 702 provides that the court must consider the following three requirements on challenges to experts: 1) qualifications of the expert witness; 2) relevance of the proposed testimony; and 3) reliability of the principles and methodology on which the testimony is based.[1] The proponent of the expert testimony bears the burden of proving its admissibility, by a preponderance of the evidence. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).

The trial court has broad latitude in determining the admissibility of expert testimony. *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Rejection of expert testimony is the exception rather than the rule, and the court's role as gatekeeper "does not replace the traditional adversary system and the place of the jury within the

[1] The *Daubert* Court identified several additional factors for assessing whether the expert's methodology is valid and reliable, including whether the expert's theory had been tested and subjected to peer review, the known or potential error rate for the expert's theory or technique, the existence and maintenance of standards and controls, and the degree to which the technique or theory has been generally accepted in the scientific community. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 275 (5th Cir. 1998). However, the same standards cannot be applied to all possible fields of expertise. Accordingly, the *Daubert* analysis is necessarily flexible and fact-specific. *Kumho*, 526 U.S. at 150.

system." *Johnson v. Samsung Electronics Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011); *Scordill v. Louisville Ladder Grp., LLC*, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Scordill*, 2003 WL 22427981 at *3 (quoting *Daubert*, 509 U.S. at 596).

**B. Application**

At the outset, the court notes that plaintiffs' opposition contains general assertions as to Mr. Norman's qualifications and apparent paraphrases of his testimony. Yet plaintiffs have attached no exhibits and their memorandum does not include any citations to the record. **Plaintiffs' counsel is admonished that all assertions must be supported by citations, with page numbers wherever possible.**

As to the merits, State Farm does not challenge Norman's qualifications. Instead it raises numerous issues with his methodology, including his failure to (1) adequately inspect the roof, (2) provide adequate support for his plumbing recommendations, and (3) rely on the manufacturer's instructions for interpreting moisture meter readings. Doc. 34, att. 1. It also maintains that his assumptions based on wind speed and design limitations do not amount to the root cause analysis that Norman claims to have conducted. Finally, State Farm challenges Norman's opinions as to the course and strength of the tornado. *Id.*

Norman testified that his opinion as to shingle failure was based on his knowledge of the windspeed and the shingle's design limitations. Doc. 34, att. 3, pp. 55–56. He also admitted that he would need to inspect the decking after the shingles were removed to

assess its damage from debris strikes. *Id.* at 102–05. His training and experience provide a sufficient basis for these opinions, and counsel may cross-examine him as to any contradictory evidence that a visual inspection would have yielded.

Norman also testified that he had recommended pressure testing of the plumbing, even though plaintiffs had not reported any issues with their plumbing since the tornado. *Id.* at 80–82. He stated that he disregarded the color display set by the moisture meter's manufacturer and guidance for its interpretation. *Id.* at 90–92. He argued that these levels were not properly calibrated to older materials and, citing various standards, maintained, "An engineer is cautioned not to use the light." *Id.* at 93. Finally, Norman opined that plaintiffs' home was hit by 130 mph tornado winds. *Id.* at 66–67. His own report includes maps showing maximum winds of 115 mph as the tornado passed near plaintiffs' neighborhood, with the track stopping before plaintiffs' street. *Id.* at Exh. 1, pp. 30–31. Norman disagrees that this shows the tornado dissipating before it reached plaintiffs' home. *Id.* at 73–74. He may explain at trial whether there is any difference between 130 mph winds and 115 mph winds as to the damage he assessed.

"As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996). Also for the jury's consideration are "alleged miscalculations, erroneous assumptions, and inconsistencies that [the other party] object[s] to." *Imperial Trading Co., Inc. v. Travelers Prop. Cas. Co. of Am.*, 2009 WL 2356292, at *3 (E.D. La. Jul. 28, 2009) (citing *Southwire Co. v. J.P. Morgan Chase & Co.*, 258 F.Supp.2d 908, 935 (W.D. Wis.

2007)). Norman opined based on his inspection and interpretation of moisture readings that water intrusion had occurred due to the tornado. His decision to attribute some of this to shingle failure based on design limitations alone goes to the weight rather than the admissibility of his opinions. So too does his interpretation of the tornado map and the moisture meter readings. Finally, the court can find no basis for excluding or limiting his testimony because he recommended testing of plaintiffs' plumbing in the wake of a storm. Accordingly, defendant fails to show sufficiency errors in methodology to warrant exclusion under Rule 702 or *Daubert*.

## III.
## CONCLUSION

For the reasons stated above, **IT IS ORDERED** that defendant's *Daubert* motion [doc. 34] be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 14th day of August, 2026.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**