**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| **ULYSSES GENE THIBODEAUX ET AL** | **CASE NO. 2:25-CV-00427** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **STATE FARM FIRE & CASUALTY CO** | **MAGISTRATE JUDGE DAVID J. AYO** |

# MEMORANDUM RULING

Before the court is a Motion for Partial Summary Judgment [doc. 36] filed by defendant State Farm Fire & Casualty Company ("State Farm"). Plaintiffs oppose the motion. Doc. 45.

## I.
## BACKGROUND

This suit arises from alleged tornado damage to a home owned by plaintiffs Ulysses Gene Thibodeaux and Phyllis Thibodeaux on April 10, 2024. Doc. 1, att. 1. At all relevant times the home was insured under a policy issued by State Farm. Plaintiffs filed suit against State Farm in the Fourteenth Judicial District Court, Calcasieu Parish, Louisiana, raising breach of contract and bad faith claims under Louisiana law. *Id.* State Farm then removed the matter to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. Doc. 1. The matter is set for jury trial before the undersigned on October 19, 2026. Doc. 29.

State Farm now moves for summary judgment on plaintiffs' bad faith claims, asserting that the evidence shows a reasonable basis for its dispute of those claims and that

it therefore cannot be held liable for any untimely refusal to pay. Doc. 36. Plaintiffs oppose the motion. Doc. 45.

## II.
## SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material

fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## III.
## LAW & APPLICATION

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Louisiana law provides that an insurance policy is a contract and that its provisions are construed using the general rules of contract interpretation in the Louisiana Civil Code. *Hanover Ins. Co. v. Superior Labor Svcs., Inc.*, 179 F.Supp.3d 656, 675 (E.D. La. 2016). The words of the policy are given their generally prevailing meaning and "interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Coleman v. Sch. Bd. of Richland Par.*, 418 F.3d 511, 516–17 (5th Cir. 2005) (citing La. Civ. Code arts. 2047, 2050). Ambiguities in the policy must be construed against the insurer and in favor of coverage. *Id.* The court resolves an ambiguity by asking "how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." *Id.*

Louisiana Revised Statute § 22:1892 makes an insurer liable for penalties and attorney fees in certain circumstances based on its bad faith handling of a claim. To prevail under this statute, the insured must show that (1) the insurer received satisfactory proof of loss; (2) the insurer failed to tender payment within 30 days of receiving this proof; and (3) the insurer's failure to pay is "arbitrary, capricious, or without probable cause." *Guillory v. Lee*, 16 So.3d 1104, 1126 (La. 2009). Under Louisiana law, "satisfactory proof of loss"

means "only that which is sufficient to fully apprise the insurer of the insured's claims." *La. Bag Co., Inc. v. Audubon Indem. Co.*, 999 So.2d 1104, 1119 (La. 2008) (internal quotations omitted). "Louisiana decisions demonstrate that 'proof of loss' is a flexible requirement. An insurer of course must receive some kind of notice of a claim before it can act. So long as it receives enough information, the manner in which it obtains the information is immaterial." *Austin v. Parker,* 672 F.2d 508, 520 (5th Cir. 1982) (internal quotations omitted). However, an insurer is only obligated to pay "any undisputed amount over which reasonable minds could not differ." *Dupree v. Lafayette Ins. Co.*, 51 So.3d 673, 698 (La. 2010). In other words, "[a]n insurer does not act arbitrarily or capriciously when its refusal to pay a claim is based on a genuine dispute over coverage or the amount of loss." *Kodrin v. State Farm Fire & Cas. Co.*, 314 F. App'x 671, 679 (5th Cir. 2009).

According to the claims file, plaintiffs first reported their loss to State Farm on August 5, 2024, nearly four months after the tornado struck.[1] Doc. 36, att. 3, pp. 17, 23–24. They advised that the home had suffered roof damage, widespread interior damage, and HVAC damage. *Id.* at 23. Plaintiff Ulysses Gene Thibodeaux stated that he did not know about the damages until an engineer inspected the home in August. *Id.* at 21, 23. After a few missed calls to plaintiffs, State Farm managed to schedule an inspection for September 19, 2024. *Id.* at 21. At the inspection plaintiff reported that the air-conditioner was damaged in storm, but the field adjuster observed that the unit was running and the

[1] In their opposition plaintiffs contend that they complied with the policy's timely notice provision because plaintiff Phyllis Thibodeaux is a State Farm agent and had immediate notice of the condition of her home.

house was cold. *Id.* at 20. The adjuster only documented wind damage to a downspout, siding, and a garage panel, but did not record anything to support plaintiffs' claims of interior and roof damage. *Id.* Plaintiffs provided the report of their engineer, Charles Norman. State Farm recorded: "Engineer's report indicates the roof, duct work[,] drywall, window frames etc need to be replaced; however, the photos do not show damage to warrant this extent of repair." *Id.* at 17. State Farm then assigned an engineer from Exponent, Inc. ("Exponent"), who inspected the property on October 4. *Id.* at 15–16.

The Exponent engineer issued his report on October 23, 2024. He documented, *inter alia*, damage to the exterior cladding and downspout, stained decking below the AC unit with water dripping from the AC lines, displaced and rotated carport posts, fogged window panes with evidence of mildew growth, a cracked ceiling in the dining room and peeling ceiling paint in the kitchen and dining room, and deteriorated shingles, but noted that the roof decking and flashing were in good condition. Doc. 36, att. 4, pp. 11–30. He opined that the exterior damages were consistent with wind damage or impact from windborne debris. *Id.* at 31. He stated:

> The high winds and pressure changes associated with a tornado may compromise old and vulnerable window seals, allowing moisture to enter the space between the panes, leading to condensation between the glazing (also called fogging). **However, older windows with leaky, deteriorated seals are more prone to this type of damage, as their ability to keep moisture out is already compromised.** In the case of the subject property, there is evidence of long-term leaks between the glazing, including mildew growth and discolored spacers, suggesting age-related deterioration of the seals and that the fogged windows were likely not caused by a recent storm.

*Id.* at 32 (emphasis added). He also determined that damages to the interior finishes were not storm-related:

> The cracked ceiling and peeled ceiling paint in the dining room were caused by leaks and drips from the mechanical equipment above. The peeled ceiling paint in the kitchen area near the rear window was likely caused by leaks from the toilet or previous leaks from the roof-to-wall interface above this location. The ceiling stain at the HVAC register in the second-story bathroom was caused by condensation. There was no evidence of wind damage to the roofing above these areas that could have resulted in the water intrusion.

*Id.* State Farm updated its Coverage A estimate based on this report, but plaintiff advised State Farm that he could wait until he had submitted his contents list in order to receive one payment. Doc. 36, att. 3, p. 13. State Farm then issued payment for the Actual Cash Value ("ACV") owed under Coverage A on November 28, 2024, while still awaiting submission of plaintiffs' contents list. *Id.* at 12.

On December 16, 2024, plaintiff submitted a contents list to State Farm. *Id.* State Farm contacted plaintiffs on January 3, 2025, to discuss the lack of notice as to some of the items claimed and to request that plaintiffs use State Farm's ClaimXperience tool to add items to the claim. *Id.* at 10. On January 15, plaintiff contacted State Farm to express his dissatisfaction with the Coverage A estimate and threaten legal action. *Id.* at 8. He also indicated that he had not received the email containing ClaimXperience, and so State Farm sent it again. *Id.* On January 22, plaintiff again called to discuss his claim and State Farm sent another email with the ClaimXperience link. *Id.* at 7. On February 10, State Farm discussed the contents claim and Actual Cash Value/Replacement Cash Value process with plaintiff. *Id.* It then issued payment for the ACV of plaintiffs' contents claim. *Id.*

Plaintiffs filed this suit in state court on February 13, 2025. Doc. 1. Defense counsel then arranged another inspection of plaintiffs' home by building consultant and contractor expert Byron Earls. *See* doc. 36, att. 5. Mr. Earls inspected the property on June 26, 2025,

and opined that all damages sustained in the April 2024 tornado were "accurately depicted within the Exponent Engineering Report, as well as those emulated within the State Farm Xactimate estimate in regard to scope." *Id.* at 4. State Farm also obtained supplemental reports from Mr. Earls and Kasra Ghahremani, the Exponent engineer, in July 2026. Mr. Earls stated that his opinions remained the same and he agreed with the supplemental report issued by Mr. Ghahremani. Doc. 36, att. 5, pp. 20–21. Mr. Ghahremani stated that his opinions were also unchanged, and documented photographic evidence of some of the damages from the plaintiffs' Hurricane Laura/Delta (August and October 2020) and May 2020 hailstorm claims files. *See* doc. 36, att. 4, pp. 50–54. For instance, he showed that "[f]ogged windows were also documented in a March 25, 2021, report" and that plaintiffs testified that no windows had been replaced after the 2020 weather events. *Id.* at 53–54. As to the air conditioner, Mr. Ghahremani documented "similar distress" to the cracked and peeling ceiling paint in post-Laura photographs, "[indicating] that these conditions were recurring and long term in nature." *Id.* at 54. State Farm has also received subpoena responses from Trouth Air Conditioning, documenting leaks and other issues with plaintiffs' HVAC system in 2021 and 2022. Doc. 36, att. 8.

Plaintiffs maintain that this adjustment was unreasonable, yet their opposition is wholly inadequate. The court recently admonished plaintiffs' counsel for failing to provide support for his factual assertions. Doc. 46, p. 3. The memorandum submitted in opposition to this motion for summary judgment likewise relies on conjecture and summaries of testimony, without citation to any portion of the record. *See* doc. 45. For instance, counsel maintains that "[t]he reports of Travis Alston and Charles Norman were ignored," doc. 45,

p. 11, even though Mr. Ghahremani makes detailed responses disputing Mr. Norman's findings, on which Mr. Alston's estimate is based. *See* doc. 36, att. 4, p. 33. Plaintiffs' counsel fails to engage with the reports provided by State Farm's experts and show why these did not show at least reasonable grounds for disputing the claim. Instead he simply asserts that plaintiffs' own expert report renders this "a typical battle of competing experts," which would appear to buttress State Farm's contention that its refusal to pay certain amounts was based on "a genuine dispute over coverage or the amount of loss." *Kodrin*, 314 F. App'x at 679.

Because the court's prior admonition came before plaintiffs' opposition was filed, however, the court does not believe that plaintiffs should be penalized for the inadequate performance of their attorney. Instead, it notes that Mr. Ghahremani relies heavily on evidence of past damage to dispute that the tornado could have caused either the window fogging or the air-conditioning leaks. Yet plaintiffs have evidently testified that they first noticed these issues after the April 2024 tornado, which creates a credibility question for the jury to determine. Mr. Ghahremani does not explain how he excluded the possibility that the tornado worsened either condition and aggravated the damage.

The record thus establishes a potential basis for bad faith under State Farm's handling of plaintiffs' claims under Coverage A of the policy. There is nothing in the briefing to create a genuine issue of fact as to State Farm's handling of the contents claim. However, State Farm seeks summary judgment on plaintiffs' bad faith claim as a whole and the court will not piecemeal its ruling. The court also makes no determination as to plaintiffs' breach of their post-loss duties (namely, timely notice), because State Farm has

not sought summary judgment on whether the alleged breach serves as a defense to recovery.

## IV.
## CONCLUSION

For the reasons stated above, the Motion for Partial Summary Judgment [doc. 36] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 1st day of September, 2026.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**